EQUINE PRACTITIONERS ASSOCIATION, INC., Respondent, v NEW YORK STATE RACING AND WAGERING BOARD, Appellant.

First Department, December 20, 1984

APPEARANCES OF COUNSEL

*Arnold D. Fleischer* of counsel (*Melvyn R. Leventhal* and *Howard L. Zwickel* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for appellant.

*Beth J. Goldmacher* of counsel (*Joseph A. Faraldo,* attorney), for respondent.

*Herman E. Cooper, P. C.* (*Thomas E. Hommel* of counsel), for The Horsemen's Benevolent and Protective Association, *amicus curiae.*

### OPINION OF THE COURT

ASCH, J.

This action seeks to declare invalid rules adopted by the defendant New York State Racing and Wagering Board, effective July 1, 1982, which regulate the administration of drugs to racehorses prior to their participation in pari-mutuel races.

The challenged rules are codified at 9 NYCRR parts 4012 and 4043 (as to thoroughbreds) and part 4120 (as to standardbreds). Certain provisions in the rules restrict the administration of drugs to a racehorse prior to the start of a program containing a race in which the horse is to compete. Those sections establish a schedule which provides that certain drugs may be used at any time up to race time (9 NYCRR 4043.2 [a]; 4120.2 [a]); that certain drugs may be administered by injection until 24 hours before the start of a racing program (9 NYCRR 4043.2 [b]; 4120.2 [b]); that certain drugs may be administered by any means until 48 hours before the start of a racing program (9 NYCRR 4043.2 [c]; 4120.2 [c]); that certain drugs may be administered by any means until 72 hours before the start of a racing program (9 NYCRR 4043.2 [d]; 4120.2 [d]); and that no other

drugs may be administered by any means within one week of the start of a racing program (9 NYCRR 4043.2 [e]; 4120.2 [e]).

The challenged regulations also require every practicing veterinarian licensed by the Board to keep written records regarding his treatment of racehorses (9 NYCRR 4012.4, 4120.8). In addition, the regulations restrict the possession on racetrack premises of hypodermic equipment and controlled substances to authorized individuals only, including veterinarians (9 NYCRR 4012.1, 4120.5). To that end, the rules provide that every person who accepts a license granted by the Board consents to any search and inspection that may be conducted on the grounds of a track in order to prevent and detect violations of the aforementioned provisions (9 NYCRR 4012.1 [d]; 4120.5 [d]). Those provisions are primarily directed not at veterinarians, whom the regulations expressly permit to possess hypodermic equipment on racetrack grounds, but at other licensees (e.g., horse trainers or grooms) whose possession of such equipment would be contrary to Board rules.

The challenged regulations are, in particular, sections 4043.2 and 4120.2, governing the administration of drugs prior to race time, superseding the Board's former rules, which also sought to insure that horses would race free of medication. Under the former rules, thoroughbred racing and standardbred (harness) racing were covered by separate provisions with somewhat different wording, although they were interpreted and enforced identically.

As thus uniformly construed, the former rules imposed a blanket prohibition against the administration of any drug, for any purpose, within 48 hours of a horse's race. (9 NYCRR former 4042.2, former 4120.4.) The former rules also forbade administering any drug, no matter how long before a race, which was "of such a character as could affect the racing condition of the horse" (thoroughbred rule) or which would "[s]timulate or depress a horse" (harness rule).

The new rules promulgated by the Board were intended to provide a more flexible set of standards for trainers and veterinarians in administering drugs to a racehorse before it runs in a race. To that end, they establish a schedule which informs the horse's trainer how long before the race time a particular drug may be given to a competing horse. Certain drugs, whose administration in the Board's judgment would pose no threat to the integrity or safety of racing, are permitted to be administered right up to race time. The new rules also expressly permit a veterinarian to administer any drug to a horse, even within a

period proscribed by the rules, if in his (the veterinarian's) judgment the drug is necessary for the "life or health of the horse." (9 NYCRR 4012.4 [c]; 4120.8 [c].)

The new regulations were formulated with the aid of Dr. George A. Maylin, the Board's scientific consultant, who is director of the Board's Drug Testing and Research program at Cornell University. The Board also claims that it solicited and took into account the views of certain practicing equine veterinarians and certain trainers. It must be noted that the regulations apply only to horses participating in a race. Thus, the person ultimately responsible for compliance with them is not the veterinarian, but the trainers. (9 NYCRR 4043.4, 4120.4.)

The original plaintiffs in this action were 21 veterinarians who are licensed by the State Board of Regents and who also hold licenses issued by the defendant Board. Those latter licenses allowed them access to a racetrack grounds where horses under their care are located. Subsequently, on plaintiffs' cross motion, The Equine Practitioners Association, Inc., a not-for-profit corporation, was substituted as party plaintiff.

The complaint seeks declaratory and injunctive relief against the Board, and challenges the 1982 rules on several grounds. The plaintiff contends that the regulations arbitrarily distinguish among various drugs as to time and method of administration and, thus, constitute a denial of due process of law.

The complaint also asserts that the new rules improperly attempt to regulate the practice of veterinary medicine, thereby exceeding the Board's statutory authority and usurping powers vested in the Board of Regents. The complaint also alleges that the regulations are burdensome in that they require racetrack veterinarians to keep certain records. Finally, the regulations are alleged to violate the constitutional protections against unlawful search and seizure.

After service of the complaint, the Board moved to dismiss it pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action. The Board asserted that the 1982 rules were within its power to promulgate, were reasonable, were not unduly burdensome, did not improperly seek to regulate veterinary medicine, and did not violate the constitutional protections against unlawful search and seizure.

Special Term treated the Board's motion as one for summary judgment, since dismissal of the complaint alone would not be an affirmative declaration of the parties' rights within the framework of the Board's statutory responsibility. It found that

the complaint raised issues of fact concerning the practice of veterinary medicine and, by implication, the scope of the Board's authority to regulate the activities of racetrack veterinarians.

On May 17, 1984, this court granted leave to The Horsemen's Benevolent and Protective Association (HBPA) to file an *amicus curiae* brief. The HBPA is an organization of owners and trainers of thoroughbred horses. HBPA was concerned about the primary responsibility imposed upon trainers by parts 4120, 4012 and 4043 of the 1982 Board rules.

As noted, Special Term treated the motion herein as one pursuant to CPLR 3212. The parties also considered the motion as one for summary judgment. Thus, the issue presented is whether a material issue of fact exists which would preclude summary judgment in favor of the defendant Board (see *Maybrown v Malverne Distrs.*, 57 AD2d 548).

Special Term erred when it found issues of fact to be present and denied summary judgment.

Pursuant to subdivision 1 of section 101 of the Racing, Pari-Mutuel Wagering and Breeding Law, the Board exercises "general jurisdiction over all horse racing activities and all pari-mutuel betting activities, both on-track and off-track, in the state and over the corporations, associations, and persons engaged therein." The Board's statutory powers specifically include the power to prescribe rules and regulations in order to prevent "the use of improper devices, the administration of drugs or stimulants or other improper acts for the purpose of affecting the speed" of the horses that are about to participate in races. (Racing, Pari-Mutuel Wagering and Breeding Law, § 301, subd 2, par b.) In addition, "An administrative agency, as a creature of the Legislature, is clothed with those powers expressly conferred by its authorizing statute, as well as those required by necessary implication (see, e.g., *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 480; *Matter of Bates v Toia*, 45 NY2d 460, 464)." (*Matter of City of New York v State of New York Comm. on Cable Tel.*, 47 NY2d 89, 92).

The Legislature has recognized the State's interest in assuring the integrity of racing carried on under its auspices. (*Barry v Barchi*, 443 US 55, 64.) It must be noted that horse racing is the only sport in this State in which wagering is allowed. (*Lasky v Van Lindt*, 115 Misc 2d 259.) Thus, the Board is empowered "to prescribe rules and regulations for the effective control" of horse racing. (*Matter of Bokman v New York State Racing & Wagering Bd.*, 77 AD2d 459, 461.)

The plaintiff claims that the Board seeks to impermissibly regulate the practice of veterinary medicine, which is the province of the Board of Regents. However, the 1982 rules apply only to horses entered in a race and do not prohibit a licensed veterinarian from administering a drug necessary for the life or health of a horse. (See *Whalen v Roe,* 429 US 589, 603.) The decision to prescribe a drug is left with the veterinarian (as it was left with the physician in *Whalen v Roe, supra*).

Plaintiff claims that the Board's regulations deprive veterinarians of due process of law because they arbitrarily distinguish among various drugs with regard to time and method of administration. The contested provisions, however, are rationally based and reasonably related to the promotion of the public welfare as reflected in the Board's statutory authority (see *Montgomery v Daniels,* 38 NY2d 41, 56).

Plaintiff disagrees with the time schedule for administering drugs which is established in the challenged regulations. By its attorney's affirmation and the affidavit of an expert, it disputes the Board's reliance upon the "clearance" time of drugs in a horse's urine. Plaintiff disagrees with the Board's determination that the "clearance" time is related to the drug's effect upon a horse's performance in a race.

However, as noted, *supra,* the regulations were established based upon the advice of the Board's expert and in response to the demands of the racing industry. Under these circumstances, the court may not substitute its judgment for that of the Board (*Montgomery v Daniels, supra,* at p 56). There was a rational relationship between the rules and the purpose for which they were adopted. The fact that plaintiff disagrees with the scientific methodology employed by the Board does not deprive the rules of their rational basis.

Sections 4012.1 (d) and 4120.5 (d) of the Board's regulations each provides as follows: "Each track is required to use all reasonable efforts to prevent and detect violations of this section. Each track, the board and the stewards ["judges" in 4120.5 (d)] or their designees shall have the right to enter into or upon the buildings, stables, rooms, motor vehicles or other places within the grounds of such track to examine the same and to inspect and examine the personal property and effects of any person within such places; and every person who has been granted a license by the board, by accepting his license, does consent to such search including a personal search and to the seizure of any drugs or hypodermic syringes, hypodermic needles or other devices and if the board shall find that any

person has refused to permit any such search or seizure it may impose such punishment as may be appropriate." The plaintiff contends that those sections deprive racetrack veterinarians of their constitutional right to be free from unreasonable search and seizure and amount to an impermissible delegation of authority by the Board.

The Board is empowered to attach certain conditions to licenses issued to equine veterinarians and to others under its jurisdiction. (See *Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269.) The Board, having promulgated regulations, in turn has the power to delegate certain functions, neither legislative nor rule making in nature, in order effectively to implement those regulations (*Morgan v New York Racing Assn.,* 72 AD2d 740).

Horse racing is a closely regulated business (*Barry v Barchi, supra; Matter of Sullivan County Harness Racing Assn. v Glasser, supra*). Each racetrack veterinarian, as a participant in a pervasively regulated business, "has voluntarily chosen to subject himself to a full arsenal of governmental regulation" (*Marshall v Barlow's, Inc.,* 436 US 307, 313; see, also, *Almeida-Sanchez v United States,* 413 US 266, 271).

■ The inspections provided for in the contested regulations insure compliance with, and deter evasion of, the Board's prohibition against possession of hypodermic equipment and controlled substances contained in sections 4012.1 and 4120.5.

These inspections are an essential aspect of the regulatory scheme. (See *United States v Biswell,* 406 US 311.) *Sokolov v Village of Freeport* (52 NY2d 341) cited by plaintiff, did not involve a pervasively regulated business like horse racing. The Court of Appeals specifically distinguished such a business in its decision in *Sokolov* (52 NY2d, at p 346, n 1).

■ The HBPA, as *amicus curiae,* raises the issues of the effect of the 1982 regulations on trainers. That issue was not raised by the complaint and need not be considered herein. In any event, the contention of the HBPA that the regulations deprive trainers of due process, since the Board is authorized to suspend a trainer without a hearing, is without merit. Subdivision 3 of section 401 of the State Administrative Procedure Act expressly permits a prehearing suspension in an emergency, and even then, such suspension may be challenged in a CPLR article 78 proceeding. The United States Supreme Court has held that such a summary suspension, based upon a rebuttable presumption of trainer responsibility when the State has probable cause

to believe that a horse has been drugged and that the trainer has been, at least, negligent, does not violate due process (*Barry v Barchi*, 443 US 55, 64-65).

Accordingly, the order of the Supreme Court, New York County (D. Edwards, J.), entered October 26, 1983, which denied defendant's motion to dismiss the complaint and granted a cross motion by the original veterinarian plaintiffs to substitute the not-for-profit corporation known as The Equine Practitioners Association, Inc., as party plaintiff in the action, should be modified, on the law, to grant defendant's motion and declare that the challenged regulations herein were within the defendant Board's statutory authority to promulgate, and were rationally based and constitutional, and otherwise affirmed, without costs.

MURPHY, P. J., SANDLER, MILONAS and ALEXANDER, JJ., concur.

Order, Supreme Court, New York County, entered on October 26, 1983, unanimously modified, on the law, to grant defendant's motion and declare that the challenged regulations herein were within the defendant Board's statutory authority to promulgate, and were rationally based and constitutional, and otherwise affirmed, without costs and without disbursements.