477 So.2d 683 (1985)
Vernon PULLIN
v.
LOUISIANA STATE RACING COMMISSION.
No. 85-C-0752.
Supreme Court of Louisiana.
October 21, 1985.
Rehearing Granted November 21, 1985.
*684 William J. Guste, Jr., Atty. Gen., Robert A. Barnett, John E. Jackson, Jr., Asst. Attys. Gen., for defendant-applicant.
Salvadore Anzelmo, Thomas W. Milliner, New Orleans, for plaintiff-respondent.
*685 WATSON, Justice.
Is the evidence seized in a warrantless search of a race track barn admissible in an administrative disciplinary hearing?

FACTS
Vernon Pullin, a Louisiana licensed owner and trainer of race horses, operated a stable at Delta Downs Race Track in Vinton, Louisiana. On September 25, 1983, Troopers Matt Issman and Lee Kavanaugh, members of the Louisiana State Police Racing Investigations Unit, together with Jimmy Moore, chief of security at Delta Downs, and Deputy Don Buxton of the Calcasieu Parish Sheriff's office, conducted a search of barn number 16 which was assigned to Pullin. Hidden among several bales of hay, which were identified as belonging to Pullin, were a bottle of Dilaudid pills, a bottle of Mazindol pills, four syringes containing Dilaudid, and a battery machine.
After a hearing, the three stewards of the race track suspended Pullin for violation of the Rules of Racing, specifically, LAC 11-6:53.22 banning prohibited drugs in the stable area of a race track.[1] The matter was referred by state steward Judy Dugas to the Louisiana State Racing Commission and Pullin applied for a suspensive appeal to the commission.
The commission upheld the ruling of the stewards, fined Pullin $2,000 and suspended him for three years effective November 1, 1983. The only witnesses at the hearing were Judy Dugas, who said she was not present at the barn when the search was conducted, Trooper Matthew Issman, and Pullin. Trooper Issman identified Dilaudid as a Schedule II controlled dangerous substance and a powerful pain killer. Pullin said he was not present when the search was conducted and had no knowledge of the contraband.[2]
Vernon Pullin applied for judicial review of the commission's decision, which was affirmed by the trial court. The court of appeal reversed, finding the warrantless search unconstitutional. 465 So.2d 122 (La. App. 4 Cir.1985). A writ was granted to review the judgment of the court of appeal. 468 So.2d 1198 (La., 1985).

LAW
Unreasonable searches and seizures are prohibited by the Louisiana and United States Constitutions.[3] In determining whether a search and seizure is reasonable, the surrounding circumstances must be considered and the intrusion on an individual right to privacy balanced against the government's interest in the search. United States v. Montoya De Hernandez, 473 U.S. ___, 105 S.Ct. 3304, 87 L.Ed.2d 381 *686 (1985); New Jersey v. T.L.O., 469 U.S. ___, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); United States v. Villamonte-Marquez, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983); Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).
A participant in a closely regulated and licensed business consents to certain restrictions on his expectation of privacy. United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981). There is a recognized exception to the search warrant requirement with regard to horse racing. Peterson v. Com., Pa. State Horse Racing, 449 A.2d 774, 68 Pa.Cmwlth. 353 (1982). Since they cannot expect privacy in that occupation, participants in the sport consent to the reasonable and necessary restrictions inherent in the business. Shoemaker v. Handel, 608 F.Supp. 1151 (D.C.N. J.1985).
Because horse racing is a strictly regulated activity, licenses to participate in the sport are only issued under certain terms and conditions. LSA-R.S. 4:150.[4] *687 Among other things, a licensee must agree to being searched within the grounds of a racing association.[5] This type of consent is valid, despite the element of coercion. United States v. Biswell, supra; Colonnade Catering Corp. v. United States, supra; Lanchester v. Pennsylvania State Horse Rac. Com'n, 325 A.2d 648, 16 Pa. Cmwlth. 85 (1974); Euster v. Pennsylvania State Horse Racing Commission, 431 F.Supp. 828 (D.C.Pa.1977); Federman v. State of Florida, Department of Business Regulation, Division of Pari-Mutual Wagering, 414 So.2d 28 (Fla.App., 1982). Since the state has such a strong interest in assuring the honesty of horse racing, licenses can be subject to terms and conditions which might be inappropriate in another context. Durham v. Louisiana State Racing Comm'n, 458 So.2d 1292 (La., 1984); G.M. Leasing Corp. v. United States, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); Equine Practitioners v. New York State Racing, 483 N.Y.S.2d 239, 105 A.D.2d 215 (1984).
Pullin had less expectation of privacy in the barn area, which was actually owned by the race track and merely assigned to him for temporary use, than he would have had in his own person or vehicle. Compare State v. Hernandez, 408 So.2d 911 (La., 1981). Of course, Pullin has standing to contest the legality of the search as one "adversely affected,"[6] but the intrusion on his privacy in the hay area of the barn was smaller than it might have been at another location. See Matter of Rozas Gibson Pharmacy of Eunice, Inc., 382 So.2d 929 (La., 1980) and State v. Barnett, 389 So.2d 352 (La., 1980) with regard to the diminished expectation of privacy on licensed premises.
In a civil administrative proceeding, relevant evidence which might be excluded in a criminal prosecution can be considered.[7]United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Delguidice v. New Jersey Racing Commission, 491 A.2d 682, 99 N.J. 175 (1984); LaMartiniere v. Department of Employment Sec., 372 So.2d 690 (La.App. 1 Cir.1979), writ denied 375 So.2d 945 (La., 1979). An exception to the search warrant requirement exists for administrative searches designed to maintain the integrity of such closely regulated activities as horse racing. State v. Dolce, 428 A.2d 947, 178 N.J.Super. 275 (1981); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).[8]
The procedures of the Louisiana Racing Commission are governed by the Administrative Procedure Act. LSA-R.S. 4:154.[9] *688 The commission may impose fines not exceeding $10,000 and may suspend a licensee indefinitely. LSA-R.S. 4:155.[10] These sanctions are imposed for violations of the Rules of Racing or the provisions of LSA-R.S. 4:152.[11] When there has been a corrupt practice which unlawfully alters the order of finish in a race,[12] the commission may report to the appropriate district attorney for criminal prosecution under the provisions of LSA-R.S. 4:175[13] and LSA-R.S. 4:152.1.[14]

*689 CONCLUSION
Pullin contends that, even granting the state's right to search, the search was not conducted according to the rules of the racing commission which require such searches to be authorized by the commission or the steward representing the commission.[15] In this case, the state steward representing the commission, Judy Dugas, testified that she was not present when the search was being conducted and there is no evidence that the search was directly authorized by the commission. However, the State Police Racing Investigations Unit is an enforcement arm of the state racing commission. The commission is responsible for carrying out the objects, purposes, duties and policies of Part I, Chapter 4, of the Louisiana Revised Statutes governing horse racing; included in Part I is a deduction to pay the expenses of the State Police Racing Investigations Unit. LSA-R.S. 4:166.5.[16] This is a legislative authorization of the Unit as an adjunct of the commission. Since the Unit is an enforcement arm of the commission, its activities must be regarded as authorized by the commission.
Granting, arguendo, that this search was not properly authorized by the commission and the evidence was illegally seized, this is not a criminal prosecution. The purpose of the exclusionary rule is to deter unlawful police conduct and that purpose is not served by excluding evidence in a civil proceeding.
Pullin also contends that the racing commission is not authorized to proceed against him because LSA-R.S. 4:175 requires action by the district attorney, but that statute concerns the various corrupt *690 practices by which race results are altered, rather than the possession of prohibited drugs and syringes.
Therefore, the evidence was legally seized by the members of the Louisiana State Police Racing Investigations Unit, an enforcement arm of the Louisiana State Racing Commission. Even if the evidence were illegally seized, no purpose is served by excluding it in a civil administrative proceeding.
For the foregoing reasons, the judgment of the court of appeal is reversed, and the judgment of the trial court is reinstated.
REVERSED.
DIXON, C.J., concurs in the result.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
LEMMON, J., dissents on the authorization issue, agreeing with the concurring opinion in the court of appeal.
CALOGERO, Justice, dissenting.
Consent is of course a well recognized exception to the warrant requirement. Nonetheless, both the "consent" given and the Rules and Regulations should be strictly construed. The Commission has the burden of proving compliance with their own regulations.
Here the Commission Regulation (LAC 11-6:53.25) to which plaintiff consented in writing, provides that the Commission, or the steward representing the Commission has the power to authorize warrantless searches of the track premises. It does not authorize the Louisiana State Police Racing Investigation unit, or any other law enforcement agency to do so.
For these reasons I would affirm the judgment of the Court of Appeal.
NOTES
[1] LAC 11-6:53.22 provides:

"No person shall have in his possession, within the confines of a race track or within its stables, buildings, sheds or grounds, or within an auxiliary (off-track) stable area, where horses are lodged or kept which are eligible to race over a race track of any association holding a race meeting, any prohibited drugs, hypodermic syringes or hypodermic needles or similar instruments which may be used for injection, except that licensed veterinarians may have in their possession such drugs, instruments or appliance, etc. as required in general veterinary practice."
[2] Under an "absolute insurer" rule, the state of Florida holds a trainer responsible for the presence of any prohibited drugs in a horse regardless of knowledge. Solimena v. State, Dept. of Business Reg., 402 So.2d 1240 at 1242 (Fla.App. 1981), review den. 412 So.2d 470 (1982).
[3] LSA-Const. 1974, Art. I, § 5 provides:

"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
U.S. Const., Amend. IV, provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[4] LSA-R.S. 4:150 provides:

"A. The Commission may grant, refuse, suspend, or withdraw licenses to horse owners, jockeys, riders, agents, trainers, grooms, stable foremen, exercise boys, veterinarians, valets, platers, and/or anyone licensed pursuant to this Part and any rules and regulations the Commission adopts and upon the payment of a license fee as fixed pursuant to this Part. No license under this section shall be granted for more than one fiscal year, but a license issued pursuant to this Part is valid at all race meetings in the state during the period. Any license may be revoked by the commission and any person whose license has been revoked is ineligible to participate in racing unless the license is returned by the commission with permission to operate thereunder. No license shall be refused to any applicant who is qualified in accordance with the rules and regulations adopted by the commission; and no license shall be revoked without just cause.
"The granting of a license to a trainer shall make him responsible for and be the absolute insurer of the condition of the horses he enters regardless of acts of third parties.
"B. Applicants for a license under this Section shall meet the following qualifications and conditions. qualifications and conditions:
"(1) Is a person of good character and reputation and meets the age requirements for the particular license as set forth in the Rules of Racing.
"(2) Has not been convicted of a felony under the laws of the United States, the state of Louisiana, or any other state or country; provided, however, that the commission may, at its discretion, issue or renew a license, where the applicant or licensee has maintained a good record and evidenced honest character from the date of expiration of sentence, and for good cause shown.
"(3) Has not, nor has his partner, agent, employee or associate knowingly associated or consorted with any person or persons who have been convicted of a felony in any jurisdiction or jurisdictions or is knowingly consorting or associating with bookmakers, touts, or persons of similar pursuits or has himself engaged in similar pursuits or has been found guilty of any fraud or misrepresentation in connection with racing, breeding, or otherwise or has violated any law, rule, or regulation, with respect to racing in this or any other jurisdiction or any rule, regulation or order of the commission, or has been guilty or engaged in similar related or like practices, provided, however, that the commission may issue or renew a license or refuse to suspend or revoke a license issued, where the applicant or licensee has not engaged in such association or activities for a period of ten years or for good cause shown.
"(4) Is financially responsible.
"(5) Possesses the required experience and knowledge required for the particular license applied for as set forth in the Rules of Racing.
"(6) Has secured the written recommendation of two reputable persons in the racing industry.
"(7) Fully complies with the form requirements printed by the racing commission.
"(8) Is physically fit.
"(9) Has not been convicted of violating any municipal or parish ordinances adopted pursuant to the provisions of the chapter. If the applicant has been so convicted, the granting of a license is within the discretion of the racing commission.
"(10) Is not the spouse of a person whose application has been denied or whose license has been revoked, unless judicially separated or divorced.
"(11) Certifies that he has read or has had read to him the rules of racing and agrees to abide by these rules.
"(12) Is not in bad standing in any racing jurisdiction."
[5] "By the acceptance of any license issued pursuant to this application, I agree to abide by the Rules and Regulations of the Louisiana State Racing Commission, and consent to any provisions which may be contained in any of them for the search, within the grounds of a racing association, of any premises which I may occupy or control or have the right to occupy or control and of my personal property and effects, and the seizure of any article, the having of which within such grounds may be forbidden, and agree to accept the decision of the racing officials as final on any matter relating thereto or to a race or racing.

"I HEREBY CERTIFY that every statement contained herein is true and correct and that I have read or have had read to me the Rules of Racing. I understand that any misstatement or omission in this application may result in revocation of my license. I agree to abide by and obey the rules, regulations and conditions of the LOUISIANA STATE RACING COMMISSION and Statutes and Laws of the State of Louisiana.
 /s/ Vernon Pullin
 Signature of Applicant"

[6] LSA-Const. 1974, Art. I, Section 5.
[7] Even if they are illegally seized, gambling devices are subject to forfeiture. U.S. v. 137 Draw Poker-Type Machines & 6 Slot Mach., 606 F.Supp. 747 (D.C.Ohio 1984).
[8] In Rush v. Obledo, 517 F.Supp. 905 at 910, footnote seven (D.C.Cal.1981), there is an extensive listing of cases upholding warrantless administrative searches.
[9] LSA-R.S. 4:154 provides in pertinent part:

"A. Except as otherwise provided by this Section, the commission's hearings, practice and procedure, and rule making procedure are as provided in the Administrative Procedure Act;..."
[10] LSA-R.S. 4:155 provides:

"The commission may impose upon a licensee a fine not exceeding ten thousand dollars and may suspend a licensee indefinitely, or both. Any commission action taken herein shall be consistent with the provisions of this Part."
[11] LSA-R.S. 4:152 provides:

"A. The commission may refuse, suspend, or withdraw licenses, permits, and privileges granted by it or terminate racing privileges for just cause in accordance with the provisions of Subsection B of this Section. Those things constituting just cause are:
"(1) Any action or attempted action by a permittee contrary to the provisions of this Part and law.
"(2) Corrupt practice.
"(3) Violation of the Rules of Racing.
"(4) Willful falsification or misstatement of fact in an application for racing privileges.
"(5) Material false statement, under oath, to a racing official, other than a commissioner or to the commission.
"(6) Willful disobedience of a commission order or of a lawful order of a racing official other than a commissioner.
"(7) Continued failure or inability to meet financial obligations connected with his business, occupation, or profession performed or engaged in on the track grounds.
"(8) The loss or inability to meet any of the qualifications and conditions set forth for a license in R.S. 4:150(B)(1), (2), (3), (4), (5), (6), (7), (8), (9), (11) and (12).
"B. Notwithstanding the provisions of Subsection A of this Section, the commission shall suspend for a period of one year all licenses, permits and privileges granted to any horseman, jockey, rider, groom, stable foreman, exercise boy, valet, plater, licensee, permittee, racing official, agent, apprentice, custodian, caterer, partnership, vendor veterinarian, or other person who, within a period of one year, is suspended five times for a period of at least five days each time for commission of acts constituting just cause under Subsection A of this Section. Any person aggrieved by such order of suspension as provided for herein shall have the right to contest such order and have the entire matter reviewed in a court of competent jurisdiction as provided in R.S. 4:154 and R.S. 49:951 et seq."
[12] LSA-R.S. 4:143(4) provides:

"Unless the context indicates otherwise, the following terms shall have the meaning ascribed to them below:
* * * * * *
"(4) `Corrupt Practice' means anything which can reasonably be construed as unlawfully pre-arranging or attempting to unlawfully pre-arrange the order of finish of a race."
[13] LSA-R.S. 4:175 provides:

"No person shall administer or apply or cause to be administered or applied to any horse which has been entered in any race any drug, chemical or other substance whatsoever, or any electric battery or other apparatus, which might have the effect of unnaturally depressing, stimulating or exciting any horse during any race. No jockey mounted on any horse during a race shall willfully pull the reins, or do anything whatsoever that has the effect of diminishing the chance of the horse winning any race whether such action on the part of the jockey is of his own accord, by instructions from the owner of the horse, or as a result of conspiracy with any other person.
"Whoever violates or attempts to violate this section shall be fined not less than one hundred dollars nor more than seven hundred and fifty dollars, or imprisoned for not less than thirty days nor more than six months, or both.
"The commission shall investigate any violation of this Section and shall make written report of it to the district attorney, and shall send a copy of the report to the attorney general."
[14] LSA-R.S. 4:152.1 provides:

"In addition to the procedures and sanctions provided in this Part, the commission or any interested person may petition a state court of competent jurisdiction for a judgment declaring that a certain person or persons have committed a corrupt practice as defined by R.S. 4:143. The court, after due proceedings in accordance with the constitution and laws of this state, shall render such judgment if the law and evidence presented before the court so warrants. The clerk of any state court rendering or affirming such judgment shall forthwith send a certified copy of such judgment to the commission. Upon the filing with the commission of a certified copy of a final and definitive court judgment declaring any person to have committed a corrupt practice as defined by R.S. 4:143, the commission shall promptly terminate all licenses, permits, and privileges granted to such person under this Part and shall bar such person from ever obtaining in the future any license, permit, or privilege under this Part.
"B. The same provisions in Subsection A of this Section shall apply, respectively, to persons who have been duly declared by a court of competent jurisdiction of another state to have committed a corrupt practice as defined in R.S. 4:143."
[15] LAC 11-6:53.25 provides:

"The Commission, or the steward representing the Commission, investigating violations of law or the rules of the Commission, shall have the power to authorize searches of the person or the power to authorize entry and search of the stables, rooms, vehicles, or any other place within the track enclosure at which a race meeting is being held, or other tracks or places where horses eligible to race at the race meeting are kept. The Commission or the steward representing the Commission shall also have the authority to conduct or authorize searches of all persons licensed by the Commission and of all employees and agents of any race track association licensed by the Commission, and of all vendors who are permitted by the race track association to sell and distribute their wares and merchandise within the race track enclosure in order to inspect and examine the personal effects or property of such person or kept in stables, rooms, vehicles, or other places. Each licensee and permitee, in accepting a license, shall be deemed to have consented to such search and does waive and release all claims or possible actions for damages that he may have by virtue of any action taken under this rule."
[16] LSA-R.S. 4:166.5 provides:

"A. In addition to any license fees imposed by R.S. 4:161, in addition to any commissions to be deducted under R.S. 4:161, in addition to any deductions required by the provisions of R.S. 4:166.1, and in addition to any deductions required by the provisions of R.S. 4:166.2, there shall be imposed additionally a one-half of one percent deduction to be taken from the total daily pools of all exotic wagering pools as hereinafter defined. Proceeds derived from the deduction provided by this Section shall be delivered to the state treasurer to pay the expenses of the State Police Racing Investigations Unit, including the salaries and expenses of its staff, employees, and other expenses incurred, but subject to legislative appropriation. Said proceeds shall be paid by the treasurer to the Department of Public Safety, office of state police from year to year, and such proceeds shall be in addition to any other funds or revenues appropriated to the Department of Public Safety, office of state police by the Legislature. For fiscal year 1982-83 the office of state police shall submit a line-item budget to the Division of Administration and Joint Legislative Committee on the Budget for approval before any of the proceeds may be expended. The balance of these funds shall revert to the general fund at the end of any fiscal year.
"B. Exotic wagering pools for purposes of this Section shall include all pari-mutuel pools except the win, place, or show pools for each race conducted at each race meeting in this state. Examples of exotic wagering pools in common usage are daily double pools, exact pools, and quinella pools."