# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-77


**DUSTIN BONIAL**

**VERSUS**

**CITY OF ALEXANDRIA**


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 259,668
HONORABLE GEORGE C. METOYER JR., DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**

**Daniel E. Broussard, Jr.**
**Broussard, Halcomb & Vizzier**
**Post Office Box 1311**
**Alexandria, LA   71309**
**(318) 487-4589**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Dustin Bonial**

**Steven M. Oxenhandler**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, LA   71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **City of Alexandria**

**AMY, Judge.**

After directing a racial epithet towards a coworker, the plaintiff was terminated from his employment with the City of Alexandria. He appealed his termination to the Alexandria Civil Service Commission, where a majority of the Commission members voted to affirm the termination. The plaintiff then appealed his termination to the trial court, which affirmed the Commission's decision. He now appeals to this Court. For the following reasons, we affirm.

## Factual and Procedural Background

Dustin Bonial worked for the City of Alexandria as an apprentice lineman in the Electric Distribution Department. After allegations of an incident occurring between Mr. Bonial and a coworker, a pre-disciplinary hearing was held. At this hearing, Mr. Bonial admitted that, on January 23, 2017, he used a racial epithet regarding a coworker, Charles Turner, in the breakroom of the City's facility. Citing violations of the City's "Workplace Conduct Policy" and Civil Service Rule XII, § 1.3, the City terminated Mr. Bonial from his employment on February 16, 2017. Subsequently, Mr. Bonial appealed his termination to the Alexandria Civil Service Commission ("Commission"), and a hearing was held. At the hearing, the parties stipulated "that Mr. Bonial called Mr. Turner" by the epithet.

Mr. Turner testified at the hearing, explaining that he is a warehouse clerk with the City's electrical department. He was asked by counsel for the City to recount what happened in the City's breakroom on January 23, 2017:

> Q    Could you explain to the board what happened some - - some time in the morning, I believe it was?
>
> A    It was at - - I think it was lunchtime. I just was walking in the break room to go use the bathroom. I just wanted to chill. And it's, "Look at this n----- [hereinafter "racial epithet"]," you know.

. . . .

Q      And how did that make you feel?

A      Disrespected . . . why would [someone] say that? . . . I wasn't worried about him or focused on him. I was going to use the bathroom.

Mr. Turner was subsequently questioned on cross examination by counsel for Mr. Bonial, as follows:

Q      Tell me exactly what he said.

A      He said - - swung his chair around, "Hey, y'all, look at this [racial epithet]."

Q      He just - - he just said that out of the blue?

A      Just said it out of the blue.

. . . .

Q      I say - - my question: Did you ever tell him that you didn't want him to use that word?

A      Like I said, I mean, it should be common sense. I didn't want him to call me that. I don't want [any]body to call me that. It should be common sense.

. . . .

Q      Now, was this an upsetting event to you?

A      It had made me mad, like, why would [someone] . . . just call me that?

Additionally, Mr. Bonial testified at the hearing regarding the incident, and the following colloquy occurred:

Q      Mr. Bonial, when you came to work for the City, you signed a - - what's known as City of Alexandria Workplace Conduct policy. Do you remember this, this policy?

A      Yes, sir.

. . . .

2

Q       Is this your signature. Mr. Bonial?

A       Yes, it is.

Q       Okay.  And so you understood that you - - you read this policy and you understood it and you were - - you were going to abide by it; correct?

A       Yes, sir

        . . . .

Q       And you understand that you were not to use abusive or indecent language to a fellow employee; correct?

A       Yes, sir.

Mr. Bonial was asked whether he considered his use of the epithet to be the "proper thing to do" to which he responded:  "Prior to the incident, we - - I mean, I've called him that. . . . I called him it before.  And, you know, just like a friend, you know."  When asked why he used the epithet, Mr. Bonial stated:  "I've used it numerous [] times and he's been okay with it."

Notwithstanding the patently offensive language at issue, the City also presented the testimony of Mike Marcotte.  Mr. Marcotte explained that he is the City's director of utilities and, in that capacity, was Mr. Bonial's direct supervisor.  He confirmed that the break room is a common area for all employees.  When asked whether the use of "racial epithets . . . adversely affect[s] the efficient operation of the City[,]" Mr. Marcotte responded:  "Yes, sir.  I mean, it's certainly . . . it just - - something with the racial overtone like that, I mean, it destroys the morale, you know."  He further stated that the employees "are handling 12,000 volts in their hand.  They've got to - - they've got to get along.  They've got to know they can trust each other."  After testimony was adduced, a majority of the Commission voted to affirm Mr. Bonial's termination.

3

Mr. Bonial then filed a petition in the Ninth Judicial District Court, seeking "judicial review of the decision of the Alexandria Civil Service Commission" and asserting that the Commission erred in affirming his termination and in failing to follow the provisions of Civil Service Rule XII, § 2.6(A) and (B). After a hearing, the trial court rendered judgment, affirming the Commission's decision and denying Mr. Bonial's appeal.

Mr. Bonial now appeals, asserting the following assignments of error:

1.  The Commission and the Trial Court erred in affirming the Appointing Authority's disciplinary action of termination finding it was commensurate with the infraction that plaintiff was found guilty of.

2.  The Commission and the Trial Court erred in failing to follow the provisions of Civil Service Rule XIII[,] §2.6A and B[1] and Louisiana jurisprudence.

## Discussion

The supreme court has provided the following standard for appellate review of civil service disciplinary cases:

> [I]t is well established in our jurisprudence that appellate courts reviewing civil service disciplinary cases are presented "with a multi-faceted review function." *Mathieu v. New Orleans Public Library*,

---

[1] In briefing to this Court, Mr. Bonial provides (emphasis per the appellant's brief):

Civil Service Rule XIII[,] §2.6A and B states:

"A.   In reviewing the disciplinary actions, the Commission shall have the duty and authority to determine whether the Appointing Authority acted with just cause and within its Rules, procedures and policies in taking disciplinary action for infractions allegedly committed by an employee, and, if so, **whether the discipline imposed is commensurate with the infraction.**

B.   **The Commission shall act to modify or set aside disciplinary action taken by the Appointing Authority only when it finds that the Appointing Authority has acted unreasonably.** The fact that the Commission finds the Appointing Authority could or should have pursued a different course of action against such employee shall not be sufficient grounds to modify or set aside disciplinary action taken by the Appointing Authority."

09–2746, p. 5 (La.10/19/10), 50 So.3d 1259, 1262, *citing Bannister v. Department of Streets*, 95–0404 at 8 (La.1/16/96), 666 So.2d 641 at 647. *See also Walters v. Department of Policy of City of New Orleans*, 454 So.2d 106, 113 (La.1984) (internal citations omitted) ("[A] reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review in deciding whether to affirm the commission's factual findings."). This court in *Mathieu, supra,* summarized the appellate review function in the civil service context:

> Initially, deference should be given to the factual conclusions of the civil service commission. A reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. *Bannister*, 95–0404 at 8, 666 So.2d at 647; *Walters*, 454 So.2d at 114. Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. *Id.* "Arbitrary or capricious" means the absence of a rational basis for the action taken, *Bannister*, 95–404 at 8, 666 So.2d at 647; "abuse of discretion" generally results from a conclusion reached capriciously or in an arbitrary manner, *Burst v. Board of Commissioners, Port of New Orleans*, 93–2069, p. 5 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958.

*Mathieu v. New Orleans Public Library*, 09–2746, p. 5–6 (La.10/19/10), 50 So.3d 1259, 1262–3.

*City of Alexandria v. Dixon*, 15-1718, pp. 10-11 (La. 5/3/16), 196 So.3d 592, 598-99 (footnote omitted).

In briefing to this Court, Mr. Bonial states that "there is no dispute regarding the finding of facts by the Commission surrounding the incident that gave rise to [Mr. Bonial]'s disciplinary action." Rather, in his assignments of error, Mr. Bonial asserts that the Commission and the trial court erred in finding that the action of termination was commensurate with his infraction. He further argues that the Commission and the trial court erred in failing to rescind his termination and order an appropriate disciplinary action commensurate with his offense. Accordingly,

we turn our consideration to whether Mr. Bonial's termination was "based on legal cause and is commensurate with the infraction." *Dixon*, 196 So.3d at 599.

In *Lange v. Orleans Levee Dist.*, 10-0140, p. 14 (La. 11/30/10), 56 So.3d 925, 934, the supreme court explained: "'Cause' for termination of an employee includes conduct prejudicial to the public service involved or detrimental to its efficient operation." The repugnant nature of the subject term, alone, would seem to require no further inquiry under this standard. However, as discussed above, Mr. Marcotte further testified that the use of racial epithets adversely affects the efficient operation of the City and "destroys the morale." He explained that the workers in the electrical department have "to know they can trust each other" and that the use of racial epithets "wedges the whole department." In this regard, as noted, Mr. Turner testified that he felt "disrespected" and "mad" after Mr. Bonial's use of the racial epithet. Based on the nature of the offense and the foregoing testimony, we find that there was cause for Mr. Bonial's termination.

Further, we find no error in the Commission's and the trial court's determination that the discipline utilized in this case, termination, was commensurate with the offense. In the letter Mr. Bonial received notifying him of his termination, the City stated that Mr. Bonial's "discourteous and disrespectful" behavior towards Mr. Turner violated sections of Civil Service Rule XII, § 1.3. In particular, the City stated that Civil Service Rule XII, § 1.3 prohibits "any [] act of omission or commission tending to injure the public service[,]" as well as "any act or failure to act that the Commission accepts as sufficient to show the offender is unfit or unsuitable for employment in the classified service."

Additionally, in the termination letter, the City stated that Mr. Bonial violated the City's Workplace Conduct Policy, including various provisions from

6

Section I, which is titled "Unacceptable Behavior" and lists "[t]ypes of job-related behavior that the City considers inappropriate and, therefore, subject to corrective disciplinary action that may result in termination[.]" Specifically, the City contended that Mr. Bonial contravened Section I in the following ways:

a.  Violations of the directives, policies, procedures or practices governing the operation of the department to whom the employee reports that have been approved by the appointing authority;

b.  Disorderly, abusive, or indecent conduct that causes disruption of the work environment, including fighting, verbal abuse, or excessive arguing before seeking supervisor intervention;

c.  Any act which endangers the safety, health, or well-being of another person, or which is of sufficient magnitude that the consequences cause or potentially cause disruption of work or gross discredit to the City;

d.  Other such actions, offenses, or incidents deemed of sufficient reason to justify dismissal[.]

The City also stated that Mr. Bonial's behavior violated Section II of the Workplace Conduct Policy, which is titled "Harassment" and provides, in pertinent part:

The City prohibits all forms of harassment, whether due to race, religion, creed, color, national origin, sex, marital status, age, or the presence of any physical, mental or sensory disability. Harassment of any employee by another employee, supervisor, contractor, or customer is a serious violation of the City's policy and will not be tolerated.

Harassment . . . can be difficult to define. Misconceptions abound. Harassment can take many forms and can include slurs, comments, jokes, innuendoes, unwelcome compliments, pictures, cartoons, pranks, or other verbal or physical conduct which is based upon a person's protected status . . . .

Considering the above provisions, we do not find that the Commission and the trial court acted arbitrary, capriciously, or in abuse of discretion in finding that the action of termination was commensurate with the offense.

7

For these reasons, we conclude that cause existed for Mr. Bonial's termination and that the penalty was commensurate with the offense. Therefore, the decision of the Commission and that of the trial court to uphold the termination was neither arbitrary, capricious, nor characterized by an abuse of discretion.

## DECREE

For the foregoing reasons, the judgment of the trial court, upholding the Alexandria Civil Service Commission's vote to maintain Dustin Bonial's termination, is affirmed. All costs of this appeal are assessed against Mr. Bonial.

**AFFIRMED.**