# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #025

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **3rd day of May, 2016**, are as follows:

**BY CRICHTON, J.**:

2015-CC-1718      CITY OF ALEXANDRIA v. KENDALL DIXON (Parish of Rapides)

> For the reasons set forth herein, we find the court of appeal erred in overturning the trial court's application of Pullin, and reverse the court of appeal in that regard, specifically reinstating the trial court's finding that Pullin applies under these circumstances.  We also reinstate the trial court's order of remand to the Board for consideration of Dixon's alleged failed breath alcohol test results.  Although we also find the City did not adhere to its own Substance Abuse Policy and thus reverse that finding by the trial court, we nevertheless determine that, based on Pullin, the test results are admissible subject to whatever the weight the Board may choose to assign to the test results.
> AFFIRMED IN PART; REVERSED IN PART; REMANDED.

SUPREME COURT OF LOUISIANA

NO. 2015-CC-1718

CITY OF ALEXANDRIA

VERSUS

KENDALL DIXON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF RAPIDES

CRICHTON, J.

We granted certiorari in this case to determine whether the Alexandria Municipal Fire and Police Civil Service Board ("the Board") properly excluded a firefighter's alleged failed breath alcohol test results, resulting in the firefighter's reinstatement to employment after the City of Alexandria had terminated him. The trial court reversed the Board's decision, finding the Board should have considered the breath alcohol test results. The court of appeal overturned the trial court, reinstating the firefighter's employment. For reasons that follow, we find the Board's exclusion of the breath test results was incorrect and further, the court of appeal was in error in reversing the trial court's ruling that the breath alcohol test results were admissible. Therefore, the trial court's judgment reversing the Board's decision is reinstated, and we remand the matter to the Board for proper consideration of the breath alcohol test results.

FACTS AND PROCEDURAL HISTORY

Kendall Dixon was hired as a firefighter for the Alexandria, Louisiana, Fire Department in 2009. On February 4, 2011, Mr. Dixon received and signed a document from the Alexandria Fire Department, acknowledging his receipt and understanding of the City of Alexandria's Substance Abuse Policy and Procedures, effective February 1, 2011. The pertinent portion of the City of Alexandria

1

Substance Abuse Policy and Procedures provided at the time:

Prohibited Behavior

The City hereby prohibits the items and conduct as listed:

. . . .

II. Unauthorized Alcoholic Beverages
A. Consuming alcohol within four (4) hours prior to reporting to work (City Policy);
B. Consuming alcohol within eight (8) hours following an accident or incident which requires an alcohol test, unless an accident/incident test has been administered.
C. Using alcohol during the performance of safety-sensitive job duties;
D. Possessing a container of unauthorized alcoholic beverage in the workplace; and
E. Having an amount that is reported positive under this Policy while on his/her job (alcohol greater than .00 will result in disciplinary action up to and including termination).

. . . .

The "zero tolerance" policy further provides under the "Consequences of Prohibited Behavior" that "[e]mployees that have positive test results. . . .will be terminated if . . . .(e) employed by the Alexandria Fire or Police Department." Finally, the policy provides under the "Alcohol" section of "Testing Methods and Levels" that: "1.   A confirmed alcohol result shall be considered a policy violation.; 2.   Testing for alcohol shall be by those methods approved and recognized by the State of Louisiana for cases concerning driving while intoxicated.   All testing procedures shall conform to applicable state and federal laws."[1]

On July 4, 2014, Dixon was promoted to Substitute Fire Equipment Operator and was assigned to drive Engine 40, at Number-Four Fire Station.   On August 22, 2014, Mr. Dixon reported for his regular shift duty at Number-Four Fire Station, which began at 7:00 a.m.   Around 11:00 a.m., he was notified that he

---

[1] In Louisiana, a blood alcohol concentration of .08 percent dictates a presumption of drunken driving at the time of the offense.   Specifically, La. R.S. 32:662 (c) states:  "(c) If the person had a blood alcohol concentration at that time of 0.08 percent or more by weight, it shall be presumed that the person was under the influence of alcoholic beverages."

had been selected for random drug and alcohol screening, per the City of Alexandria Substance Abuse Policies and Procedures. After arriving for his test, Mr. Dixon was administered two Breath Alcohol Tests, utilizing a Phoenix 6.0 device. The first test, administered at approximately 11:22 a.m., registered a positive result of .024. The second test, administered at approximately 11:38 a.m., registered with a positive result of .018. Mr. Dixon was immediately placed on administrative leave with pay.

On August 28, 2014, Mr. Dixon was instructed via letter from his Fire Chief and the Mayor of the City of Alexandria that he was to attend a Pre-Disciplinary Hearing on September 5, 2014. Mr. Dixon attended the hearing with his father, Mr. Walter Dixon. On September 17, 2015, Mr. Dixon was informed in writing that he was terminated from employment with the Alexandria Fire Department, effective 7:00 a.m. September 18, 2014. According to the September 17, 2014, letter to Mr. Dixon, after his September 5, 2014, hearing, but before his termination, he was given the opportunity to meet and discuss the positive test results with the City's Medical Review Officer, Dr. Gordon Webb of Louisiana Occupational Health Services ("LOHS"), as Mr. Dixon had concerns that his medical condition could have affected the test results. As of Friday, September 12, 2014, Mr. Dixon had not made contact with LOHS or Dr. Webb for an appointment.

On September 25, 2014, Mr. Dixon formally notified the Alexandria Municipal Fire and Police Civil Service Board ("the Board") that he wished to appeal his termination and request a formal hearing before the Board. Specifically, Mr. Dixon's appeal notification stated various reasons he alleged the adverse reaction was unjustified:

> f.) The action taken was based upon evidence that should not have
> been considered, including but not limited to the following:
>> (i) There was no reasonable suspicion to support the tests

3

administered.

    (ii)    The Test was administered in violation of the City of Alexandria Substance Abuse Policy And Procedures; including but not limited to the following:

    (a) The tests were administered without Mr. Kendall's [sic] written consent;

    (b) The tests were not administered in accordance with those methods approved for use in this state for cases concerning driving while intoxicated;

    (c) The tests were not administered in accordance with the City of Alexandria Substance Abuse Policy and Procedures;

    (d) The tests did not conform to applicable laws;

    (e) The tests were not conducted randomly in compliance with the Alexandria Substance Abuse Policy and Procedures;

. . . .

    (h) No saliva sample was collected prior to the administration of the tests;

g.)  The testing machine used was not properly certified, nor was the technician;

. . . .

On October 13, 2014, prior to the hearing before the Board, Mr. Dixon also filed a "Motion to Exclude," asserting specifically that the testing for alcohol in this instance was not in accordance with the City of Alexandria Substance Abuse Policy. Specifically, plaintiff averred the Phoenix 6.0 is not an instrument approved by the Louisiana Department of Public Safety and Corrections, to determine the blood alcohol content, and the person operating the Phoenix 6.0 was not a certified operator. Moreover, plaintiff re-stated his assertion that a saliva sample was not collected to detect alcohol prior to the administration of the breath test.

The motion came for a hearing before the Board on October 28, 2014, and the Board ultimately voted to exclude the test results. By letter to the Board dated October 29, 2014, the City of Alexandria noticed its intention to appeal the Board's exclusion of Mr. Dixon's breath alcohol tests to the 9th Judicial District Court. On November 19, 2014, the City also filed a Motion to Stay all Proceedings before the Board, asserting that the Board had not yet heard the appeal of Mr. Dixon's actual

4

termination from the Fire Department. The stay was ultimately denied by the trial court on January 9, 2015, and the trial court granted an Exception of Prematurity filed by Mr. Dixon, asserting the merits of his actual termination by the City had not yet been heard.

On January 12, 2015, the Board did hear Mr. Dixon's appeal of his termination, at the conclusion of which Mr. Dixon was reinstated to his position, on a Motion by a Board member and seconded, that the "City did not act in good faith and for cause. . . ." in terminating Mr. Dixon. The City thereafter appealed the Board's decision to reinstate the plaintiff, and the matter was set for hearing on April 16, 2015. Following the hearing, the trial court reversed the Board's decision to exclude the plaintiff's breath alcohol test results, and reversed the Board's decision to vacate the plaintiff's termination and reinstate him. The trial court ordered the plaintiff's discharge from employment reinstated. Specifically finding the exclusionary rule does not apply in Civil Service hearings and employing the balancing test employed in *Pullin v. Louisiana State Racing Comm'n*, 484 So.2d 105 (La. 1986) and *Skinner v. City of Natchitoches Police Department*, 12-819 (La. App. 3 Cir. 2/6/13) (*unpublished opinion*), 2013 WL 440534, the trial judge found a social benefit of excluding the evidence to be that public employees will be put on notice of what the policy dictates as acceptable behavior. In contrast, the social cost of exclusion of the breath alcohol results is the vital interest the City has in providing safe fire prevention and control for the public safety of its citizens. In other words, according to the trial court, the public is entitled to an assurance that if there is a fire or other emergency, the fire department would respond promptly and perform their duties responsibly. If first responders such as firefighters report for duty with alcohol in their systems, they are a danger not only to themselves, but also to the motoring public. In sum, the trial court found the City did follow their substance abuse policy, which sets forth a

zero tolerance policy. The trial court further found the City's termination of Mr. Dixon was based on competent evidence, and he was afforded every due process allowed to him through the appropriate administrative procedures. Consequently, in a judgment signed April 30, 2015, the trial court reversed the Board's exclusion of the breath test results, reversed the Board's reinstatement of Dixon, reinstated the termination of Dixon, and remanded the matter for proceedings consistent with its findings.[2]

The plaintiff applied for supervisory writs to the Court of Appeal, Third Circuit, who granted the plaintiff's writ and reversed the trial court. Specifically, the appellate court found the trial court was in error in reversing the decision of the Board to exclude the evidence of the breath test. In its order, the court stated:

> Louisiana Revised Statutes 33:2501(E)(1) confines the appellate hearing before the district court "to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part." After considering the parties' arguments, testimony and submitted evidence, the Board rejected the City's position and did not consider the testing results. That determination, notwithstanding the exclusionary rule as respectively argued by the parties, must be viewed in light of La. R.S. 33:2501(B)(3)'s statement that, with regard to the civil service hearing: "The board shall have complete charge of any such hearing and investigation, and may conduct it in any manner it deems advisable, without prejudice to any person or party thereto. The procedure followed shall be informal and not necessarily bound by the legalistic rules of evidence."
>
> To the extent the Civil Service Board may have determined that the City of Alexandria violated its Substance Abuse Policy and Procedures when it administered a test on a device which is not "approved and recognized by the State of Louisiana for cases concerning driving while intoxicated[,]" that determination was not in error pursuant to the standard of review applicable to the trial court. *See* La. R.S. 33:2501(E)(1). Notably, the subject breath tester is not on the list of approved devices for this purpose. La. Admin. Code tit. 55, pt. I, § 501.

The court of appeal also distinguished *Pullin v. Louisiana State Racing Comm'n*, 484 So.2d 105 (La. 1986), in which the Louisiana State Racing Commission suspended an owner and trainer of a racehorse after prohibited drugs

---

[2] In the April 16, 2015, transcript, the trial court specifically noted that the matter "needs to go back to the Board and the Board needs to consider the test."

were found in his stable area, in violation of the racing rule which banned the use of these particular drugs. On rehearing, the supreme court in *Pullin* found the drugs were obtained illegally, as the search was not authorized or consented to by Pullin. In applying the balancing framework set forth in *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), and ultimately concluding the exclusionary rule did not apply in civil proceedings before the Louisiana State Racing Commission, the *Pullin* court discussed weighing the likely social benefits of excluding unlawfully seized evidence against the likely social costs. If the costs outweigh the benefits, then the court should not apply the rule. *Pullin*, 484 So.2d at 107. The court in *Pullin* found the benefit of extending the exclusionary rule was the deterrent value (of the state law enforcement officer), and the cost of applying the exclusionary rule was an impairment of the commission's ability to regulate the horse racing industry. Ultimately, the *Pullin* court concluded that high social costs would result from the exclusion of the challenged evidence, and as a result, they declined to apply the exclusionary rule to civil proceedings before the Louisiana State Racing Commission.

The court of appeal in this case, however, found *Pullin* inapplicable to the present circumstances. Specifically, the appellate court stated:

> . . . .[I]n finding that the exclusionary rule was inapplicable to civil proceedings before the Racing Commission, the supreme court noted, in *Pullin*, that the purpose of the exclusionary rule had already been accomplished by the inability to use the seized evidence in the criminal proceedings against the plaintiff. It also observed that any value of the application of the rule to the commission proceeding would be small. In this case, and assuming that the Civil Service Board found that the City violated its own policy, there were no corresponding adverse consequences for any such violation. *See also Skinner v. City of Natchitoches*, 12-819 (La. App. 3 Cir. 2/6/13) (unpublished opinion).

*City of Alexandria v. Kendall Dixon*, 15-585 (La. App. 3 Cir.) (unpublished opinion). The appellate court reversed the trial court and reinstated the decision of the Civil Service Board, thereby reinstating Mr. Dixon to his employment with the

Alexandria Fire Department.

The City of Alexandria filed a writ application with this Court, which was granted on November 16, 2015. *City of Alexandria v. Kendall Dixon*, 15-1718 (La. 11/16/15), ___ So.3d ___, 2015 WL 9492237.

## LAW AND ANALYSIS

In brief, Dixon asserts the trial court inappropriately conducted a *de novo* review of the Board's decision, therefore incorrectly finding *Pullin* applicable and erroneously performing a balancing test to find the breath test results to be admissible. As such, according to Dixon, the court of appeal corrected the trial court's error, reasoning that *Pullin* was inapplicable to this case, the trial court's review being limited to "the determination of whether the decision made by the board was in good faith for cause. . . ." under La. R.S. 33:2501(E)(1).[3] Dixon also avers that should this Court find the Board was in error in excluding the breath test results, the matter should be remanded to the Board to afford him his "constitutional right" to cross-examine the results, and the opportunity to refute the proffered test results with his own evidence.

In contrast, the City of Alexandria argues the appellate court erroneously overturned the trial court's decision, and instead incorrectly held that not only is the "good faith for cause" the only standard applicable to the Board's evidentiary ruling, but it also inappropriately distinguished *Pullin* and its balancing test. The City avers the trial court is entitled to conduct a *de novo* review to examine a legal ruling such as the Board's decision to exclude the breath test results, and the appellate court incorrectly vacated the trial court's decision in that regard. Moreover, as part of its *de novo* review, according to the City, the trial court

---

[3] Dixon also asserts, for the first time, that the "City of Alexandria Substance Abuse Policy and Procedures" constitutes part of his employment contract with the City of Alexandria, and if the contract is found to be ambiguous or one of adhesion, it should be interpreted against the City. Because we do not find this point germane to the instant analysis, we decline to address this argument.

8

correctly applied *Pullin* to find that the social cost of excluding the breath test results was higher than the benefit of exclusion. We agree.

Article X, § 1(B) of the Louisiana Constitution establishes the City Civil Service, which "includes all persons holding offices and positions of trust or employment in the employ of each city having over four hundred thousand population. . . ." This Court has recently reemphasized the importance of the Civil Service protections in Louisiana:

> Civil service provisions in the state constitution and the rules of the civil service commission are designed to protect career public employees from public discrimination by eliminating the "spoils" system. *See* La. Const. art. X, § 1, *et. seq.*; *Bannister v. Department of Streets*, 95-0404, p. 4 (La. 1/16/96), 666 So.2d 641, 645. Civil service laws and rules establish a system under which "non-policy forming" public employees are selected on the basis of merit and can be discharged only for insubordination, incompetency, or improper conduct." *Bannister*, 95-0404 at 4-5, 666 So.2d at 645.

*Mathieu v. New Orleans Public Library*, 09-2746, p. 4 (La. 10/19/10), 50 So.3d 1259, 1262.

This Court has also recognized that "in addition to its primary function as a quasi-judicial body, the civil service commission is empowered to generally supervise the civil service system and to establish rules for that system's administration. Civil service rules thus have the effect of law. La. Const. art. X, §10(A)(4)." *Bannister v. Department of Streets*, 95-0404, p. 5 (La. 1/16/96), 666 So.2d 641, 645.

An employee who has gained permanent status in the classified civil service cannot be subject to disciplinary action by his employer except for "cause expressed in writing." La. Const. Art. X, § 8(A). *See also, Walters v. Department of Policy of City of New Orleans*, 454 So.2d 106, 113 (La. 1984). "Cause for the dismissal" of a permanent classified civil servant has consistently been defined by this court to include "conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation." *Id,*

9

*citing Leggett v. Northwestern State College*, 242 La. 927, 140 So.2d 5 (1962); *Brickman v. New Orleans Aviation Board*, 236 La. 143, 107 So.2d 422 (1958); *Jais v. Department of Finance*, 228 La. 399, 82 So.2d 689 (1955); *Gervias v. New Orleans Department of Police*, 226 La. 782, 77 So.2d 393 (1955). *See also, Mathieu,* 09-2746, p. 5., 50 So.3d at 1262; *Evans v. DeRidder Municipal Fire and Police Civil Service Board*, 01-2466 (La. 4/3/02), 815 So.2d 61; *George v. Department of Fire*, 93-2421, (La.App. 4th Cir. 5/17/94), 637 So.2d 1097, 1101 ("Legal cause exists if the employee's conduct impairs the efficiency of the public service in which the employee is engaged.")

This court is cognizant of R.S. 33:2501(E)(3), which provides that in any appeal hearing by either the employee or appointing authority from a Board decision that is prejudicial to the employee or appointing authority, to the "court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled," that hearing "shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part." However, contrary to Dixon's characterization of the "good faith for cause" standard listed herein, this Court has been reluctant to so narrowly define that term for purposes of appellate review. In fact, it is well established in our jurisprudence that appellate courts reviewing civil service disciplinary cases are presented "with a multi-faceted review function." *Mathieu v. New Orleans Public Library*, 09-2746, p. 5 (La. 10/19/10), 50 So.3d 1259, 1262, *citing Bannister v. Department of Streets*, 95-0404 at 8 (La. 1/16/96), 666 So.2d 641 at 647. *See also Walters v. Department of Policy of City of New Orleans*, 454 So.2d 106, 113 (La. 1984) (internal citations omitted) ("[A] reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review in deciding

10

whether to affirm the commission's factual findings.").[4]  This court in *Mathieu, supra*, summarized the appellate review function in the civil service context:

> Initially, deference should be given to the factual conclusions of the civil service commission.  A reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. *Bannister*, 95-0404 at 8, 666 So.2d at 647; *Walters*, 454 So.2d at 114. Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion.  *Id.*  "Arbitrary or capricious" means the absence of a rational basis for the action taken, *Bannister,* 95-404 at 8, 666 So.2d at 647; "abuse of discretion" generally results from a conclusion reached capriciously or in an arbitrary manner, *Burst v. Board of Commissioners, Port of New Orleans*, 93-2069, p. 5 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958.

*Mathieu v. New Orleans Public Library*, 09-2746, p. 5-6 (La. 10/19/10), 50 So.3d 1259, 1262-3.

Cognizant of this standard of review set forth in our jurisprudence, we also cannot ignore this Court's opinion in the aforementioned *Pullin v. Louisiana State Racing Comm'n*, 484 So.2d 105 (La. 1986).  As discussed above, the Court in *Pullin* utilized the balancing test previously set forth by the United States Supreme Court in *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).  In *Janis*, the Court stated that in order to determine whether to extend the exclusionary rule to a particular proceeding, the court must weigh the likely social benefits of excluding unlawfully seized evidence against the likely social costs.  If

---

[4] In *Walters v. Department of Policy of City of New Orleans*, 454 So.2d 106, 113-114 (La. 1984) (internal citations omitted), this court, however, gave more specific caution in this review process:

> In reviewing the commission's procedural decisions and interpretations of law the court performs its traditional plenary functions of insuring procedural rectitude and reviewing questions of law.  Due concern both for the intention of the constitution and for the boundaries between the functions of the commission and of the court, however, demands that a reviewing court exercise other aspects of its review function with more circumspection.  In reviewing the commission's findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous.  In judging the commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission's order unless it is arbitrary, capricious or characterized by abuse of discretion.

the costs outweigh the benefits, then the court should not apply the rule. Again, as discussed above, the *Pullin* court concluded the social costs of a potential dishonest racing industry outweighed the deterrent sanction value against those who illegally seized the prohibited drugs.

In this instance, the trial court found the exclusionary rule did not apply in civil service cases, and applied *Pullin* to find that the social costs of excluding Dixon's failed alcohol breath test results was higher than the social benefit. Specifically, the trial court stated:

> . . . . I have to look at social benefits of excluding unlawfully seized evidence versus the likely social cost if I did exclude the evidence. . . . .I think that . . . .the social benefit is for people like Mr. Dixon and all other public employees to put on notice that was is acceptable, what's unacceptable and what can result in termination so that he can comply his behavior in accordance with whatever the policy is.

In terms of the social costs, the trial court correctly noted the importance of having first responders be sober and on alert is an important factor:

> . . . .[h]aving people provide for control of, of fire in this City is a likely social cost. . . . .[T]he public is entitled to believe that if there's a fire or another public safety problem, the fire department would respond promptly, arrive at the scene promptly and perform their duties responsibly. . . . .The public should expect firemen, as any other public official. . . .not to appear at work under the influence of an alcoholic beverage. I believe. . . .that if someone was allowed to report to work, uh, with alcohol in their system they could injure themselves or other fire fighters which would cause an increase, uh, of absences of personnel which would, of course, affect the public safety of the City. If operators of fire department vehicles have alcohol in their system, they will be a danger to the motoring public not only because of the speed they travel but because of the size of their vehicles. . . . .[I]f we started having collisions between fire vehicles and the public, it would be a public safety problem.

In so reasoning, the trial court ultimately concluded:

> . . . .[T]he Alexandria Municipal Fire and Police Civil Service Board's decision to reverse the City's disciplinary action of [Kendall Dixon] is an error of law. I'm gonna find that they should have included the test result that was taken, uh, by the City on August 19, 2014. . .

We agree with the trial court's reasoning, and find that any social benefit of considering the excluded breath test results (which may include an emphasis on the

City correctly applying its own policy, and likewise, the employees being aware of the regulations and related consequences of violations of the Policy) are outweighed by the social costs of excluding the results (the risk of placing the public in danger when their first responders may be under the influence of alcohol while on duty).

In the same vein, we find the court of appeal's distinction of *Pullin* unpersuasive. The court of appeal's order places great weight on the fact that the Court in *Pullin* actually considered the seized evidence at issue, whereas in this case, the Board chose not to consider the evidence. We do not find this a significant enough diversion to vitiate *Pullin*'s application to this case. In fact, the appellate court's order makes no mention of the paramount balancing test to be performed in cases involving admissibility of evidence in a civil service context. For these reasons, we reverse this portion of the court of appeal's order and specifically find *Pullin* applicable to this matter.

Although we agree with the trial court's application of the *Pullin* balancing test and its ultimate conclusion that the Board should have considered the breath test results, we do not agree with the trial court's finding that the City did not violate its own policy. As quoted above, the City's own Substance Abuse Policy states that "[t]esting for alcohol shall be by those methods approved and recognized by the State of Louisiana for cases concerning driving while intoxicated. All testing procedures shall conform to applicable state and federal laws." The testimony elicited at the hearing before the Board established that Dixon's breath alcohol test was performed on a Phoenix 6.0, a device not listed on the approved instruments to conduct blood alcohol analysis by breath sampling, as set forth in La. Admin. Code. Tit. 55, pt. I, § 501 (B) (which includes the "Intoxilyzer 5000" and the "Intoxilyzer 9000" and not a Phoenix 6.0). As such, by the strictest terms of its Policy, the City failed to conform to its own regulations.

13

Nevertheless, we do not find this violation negates the application of *Pullin*, which mandates the application of the aforementioned balancing test under these circumstances. As the trial court did, we find the balancing test requires the admission and consideration of Dixon's failed breath alcohol test results, and therefore remand this matter to the Board for proper consideration of those results.

## CONCLUSION

This Court acknowledges the important work all civil servants do in the State of Louisiana, but we also recognize and respect the significance of the consequences for actions that fall below the standard expected of those civil servants. For the reasons set forth herein, we find the court of appeal erred in overturning the trial court's application of *Pullin*, and reverse the court of appeal in that regard, specifically reinstating the trial court's finding that *Pullin* applies under these circumstances. We also reinstate the trial court's order of remand to the Board for consideration of Dixon's alleged failed breath alcohol test results. Although we also find the City did not adhere to its own Substance Abuse Policy and thus reverse that finding by the trial court, we nevertheless determine that, based on *Pullin*, the test results are admissible subject to whatever the weight the Board may choose to assign to the test results.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**