| RODNEY CRAYTON | * | NO. 2023-CA-0728 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| SEWERAGE & WATER | * | |
| BOARD OF NEW ORLEANS | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9443
Honorable Jay Ginsburg, Hearing Officer
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge
Karen K. Herman)

Jack Bohannon
SOUTHEAST LOUISIANA LEGAL SERVICES
1340 Poydras Street, Suite 120
New Orleans, LA 70112

    COUNSEL FOR PLAINTIFF/APPELLEE


Darryl Harrison
Chanelle L. Collins
SEWERAGE & WATER BOARD
625 St. Joseph Street
New Orleans, LA 70165

    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED IN PART; REVERSED
IN PART; RENDERED**

**JULY 9, 2024**

This is a civil service case. The Sewerage and Water Board of New Orleans ("SWB") appeals the September 13, 2024 decision of the Civil Service Commission ("CSC" or "Commission"), which reinstated SWB employee, Rodney Crayton ("Crayton"), with back pay and emoluments of employment. For the reasons that follow, we find that Crayton violated SWB's substance abuse policy. Further, we find that, under the circumstances of this case, suspension is the appropriate sanction for the infraction. Accordingly, we affirm the decision of the CSC to the extent it reinstated Crayton's employment with back pay and all other emoluments of employment and reverse the decision to the extent the back pay and emolument award did not reflect an eighty-day suspension. Further, we render judgment imposing an eighty-day suspension without pay.

## FACTS AND PROCEDURAL HISTORY

Crayton became an employee of SWB on March 21, 2016. At the time of the incident made subject of this appeal, he had permanent status as a painter in Support Services.

On November 11, 2022 at approximately 12:02 p.m., Alvin Flint ("Flint"), SWB's Security Manager, received a text message concerning alcohol consumption by two unidentified SWB employees. The text stated, "Van 39 is a (sic) Dumaine and Claiborne[.] Two employees drinking beer on the clock[.]" Flint asked, "Who is this!!",  and the informant replied, "Ms. Boyd with Parking and Violations."

Flint emailed screenshots of the texts to Edgar Edwards ("Edwards"), a SWB investigator, and asked him to locate SWB vehicle no. 39 through the GPS tracking system. Edwards accessed the GPS tracking system, but the location of

1

vehicle no. 39 did not register on the system. Thereafter, Dave Cappel ("Cappel"), the Director of Support Services, called Just Lamare ("Lamare"), a supervisor in the Maintenance Department, to ascertain who the occupants of vehicle no. 39 were. Lamare informed Cappel that Crayton and Dasper Newell ("Newell") were the occupants of the vehicle. Cappel then advised Edwards that "the occupants of [] vehicle [no.] 39 . . . were just arriving."

Cappel ordered that Crayton and Newell submit to substance abuse testing based on grounds of "reasonable suspicion."[1] Crayton and Newell were driven to the testing facility by Kedrick Williams ("Williams"), a supervisor in the Maintenance Department. Crayton submitted to a substance abuse screen and tested positive for alcohol at level .036 at 2:20 p.m. A second test confirmed Crayton's blood alcohol level was .030 at 2:39 p.m.

---

[1] Civil Service Rule V, §9.12 sets forth the criteria for reasonable suspicion drug testing:

> An employee shall be required to participate in the substance abuse screening procedure if there exists reasonable suspicion (Category III) to believe that the employee's fitness for duty is questionable, based on the following criteria:
>
> (a)     Any observable, work-related behavior or similar pattern of conduct that appears to be abnormal, erratic or otherwise not in conformance with acceptable City policy.
>
> (b)     Any observable, work-related behavior or similar pattern of conduct that indicates signs of impairment in normal sensory and/or motor body functions.
>
> (c)     Any articulable facts or evidence that indicate possible substance abuse on the job.
>
> (d)     Any information or evidence that warrants, or emanates from, an authorized investigation of possible drug-related activity by a specific individual or group.
>
> (e)     Any pattern of alcohol and/or drug-related behavior, conduct or activity that is violative of municipal, state or federal law.

2

On November 14, 2022, Flint instructed Edwards to conduct an investigation. Edwards visited a store located on the corner of Dumaine Street and Claiborne Avenue, which he knew from prior investigations had surveillance cameras. Edwards spoke with the store manager, who informed him that the store's camera system was inoperable at the time of the reported incident. Edwards also interviewed Williams. Williams informed Edwards that he did not observe any signs of impairment on the part of Crayton on November 11, 2022. Edwards attempted to contact Ms. Boyd but was unsuccessful in doing so.[2]

A pre-disciplinary hearing was held on December 27, 2022. Following the pre-disciplinary hearing, SWB sent Crayton a letter dated December 29, 2022 informing him that he was terminated effective December 28, 2022 for violating SWB's substance abuse policy.[3] Crayton appealed his termination to the CSC. A

---

[2] According to Edwards, Ms. Boyd was a city employee, not a SWB employee.

[3] SWB's substance abuse policy provides, in pertinent part, as follows:

> Employees should report to work fit for duty and free of any adverse effects of illegal drugs or alcohol. This policy does not prohibit employees from the lawful use and possession of prescribed medications. Employees must, however, consult with their doctors about the medications' effect on their fitness for duty and ability to work safely, and they must promptly disclose any work restrictions to their supervisor.
>
> Whenever employees are working, are operating any [SWB] vehicle, are present on [SWB] premises or are conducting [SWB]-related work offsite, they are prohibited from:
>
>> 1. Being under the influence of alcohol or an illegal drug as defined in this policy[;]
>>
>> 2. Using, possessing, buying, selling, manufacturing or dispensing an illegal drug (to include possession of drug paraphernalia)[;]
>>
>> 3. Possessing or consuming alcohol.

The substance abuse policy defines "under the influence of alcohol" as "a confirmed positive test result for an alcohol concentration greater than or equal to 0.02."

hearing was conducted on April 28, 2023 before a hearing examiner appointed by the CSC. The CSC issued a decision on September 13, 2024, finding that Crayton was wrongfully terminated because SWB lacked reasonable suspicion to subject Crayton to substance abuse testing and ordering that SWB reinstate Crayton with back pay and all other emoluments of employment. SWB appeals the CSC's decision to this Court.

## STANDARD OF REVIEW

La. Const. art. X, § 8(A) provides that a classified employee against whom disciplinary action has been taken "shall have the right of appeal" at which time, the "burden of proof ... shall be on the appointing authority." In the appeal, "the appointing authority [here, SWB] has the burden of proving, by a preponderance of the evidence: 1) the occurrence of the complained of activity; and 2) that the conduct complained of impaired the efficiency of the public service in which the appointing authority is engaged." *Clark v. Dep't of Police*, 18-0399, p. 4 (La. App. 4 Cir. 10/10/18), 257 So.3d 744, 747. On appeal, the CSC is required to "determine independently from the facts presented whether the legal cause for disciplinary action has been established and, if so, whether that disciplinary action is commensurate with the employee's detrimental conduct." *Honore' v. Dep't of Pub. Works*, 14-0986, pp. 8-9 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1127. The CSC "has the duty and authority to affirm, reverse, or modify the action taken by the Appointing Authority." *Id.*, 14-0986, p. 9, 178 So.3d at 1127.

The decision of the CSC "is subject to review on any question of law or fact upon appeal to this Court." *Cure v. Dep't of Police*, 07-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094 (citing La. Const. art. X, § 12(B)). The appellate standard of review in civil service cases is as follows: (1) the appellate review of

4

factual findings is governed by the manifest error or clearly erroneous standard; (2) if the CSC's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard; rather, the appellate court exercises its constitutional duty to review questions of law and render a judgment on the record; (3) a legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial; and (4) mixed questions of fact and law are accorded "great deference" under the manifest error standard of review. *Banks v. New Orleans Police Dep't*, 01-0859, p. 3 (La. App. 4 Cir. 9/25/02), 829 So.2d 511, 513-14 (citations omitted). Accordingly, the CSC's conclusion as to the existence or absence of cause for dismissal will only be reversed when its decision is arbitrary, capricious or an abuse of the CSC's discretion. *Razor v. New Orleans Dep't of Police*, 04-2002, p. 4 (La. App. 4 Cir. 2/15/06), 926 So.2d 1, 4; *Woods v. French Mkt. Corp.*, 21-0689, p. 6 (La. App. 4 Cir. 3/23/22), 336 So.3d 912, 916, *writ not considered*, 22-01048 (La. 10/12/22), 348 So.3d 68.

## DISCUSSION

SWB asserts as its only assignment of error that the CSC erred in reinstating Crayton to his employment on the grounds that SWB lacked reasonable suspicion for subjecting Crayton to a substance abuse test, the results of which formed the basis of SWB's decision to terminate Crayton's employment.

In *George v. Dep't of Fire*, 637 So.2d 1097, 1101 (La. App. 4th Cir. 1994), this Court addressed the authority of an appointing authority to order an employee to submit to a drug test:

> Initially, we note that the Fourth Amendment of the United States Constitution prohibition against unreasonable searches and seizures by government

officials is applicable to the states via the Fourteenth Amendment. *State v. Church,* 538 So.2d 993 (La.1989). The Louisiana Constitution protects against unreasonable invasions of privacy as well as unreasonable searches and seizures. *Id.* at 997. La. Const. art. I, § 5.

Furthermore, the collection and subsequent analysis of biological samples for the purpose of drug testing with government encouragement, endorsement, and participation are Fourth Amendment searches. *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Therefore, such searches must meet the reasonableness requirements of the Fourth Amendment. *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

It is reasonable for a governmental employer to order an employee to submit to a drug test on the basis of individualized suspicion in certain circumstances. *Banks v. Department of Public Safety and Corrections,* 598 So.2d 515, 518 (La.App. 1st Cir.1992). The factors to consider in determining whether an employer has reasonable suspicion that a particular employee is a user of illegal drugs was set forth in *Banks,* citing *Fraternal Order of Police, Lodge No. 5 v. Tucker,* 868 F.2d 74 (3d Cir.1989), as follows: (1) the nature of the tip or information; (2) the reliability of the informant; (3) the degree of corroboration; and (4) other facts contributing to suspicion or lack thereof. *Banks,* 598 So.2d at 519.

This Court has noted that information from unknown informants "is recognized as unreliable and the degree of corroboration is an important factor" in determining whether reasonable suspicion exists to warrant a non-random drug test. *Razor,* 04-2002, p. 8, 926 So.2d at 6. Additionally, an appointing authority may not rely on information gleaned after the appointing authority ordered a drug test to justify ordering the test. *Richard v. Lafayette Fire & Police Civ. Serv. Bd.,* 08-1044, 08-1623, p. 21 (La. 2/6/09), 8 So.3d 509, 521. "Because constitutional rights are implicated, the appointing authority has the burden of establishing

6

reasonable suspicion existed before a drug test was ordered." *Id.*, 08-1044, 08-1623, p. 13, 8 So.3d at 517.

The facts of the case *sub judice* case are similar to those presented in *Safford v. Dep't of Fire*, 627 So.2d 707 (La. App. 4th Cir. 1993). In *Safford*, the district fire chief received a telephone call from a woman claiming to be the plaintiff's wife, and, based on the conversation, the district chief concluded that the plaintiff was possibly intoxicated or under the influence of drugs while on duty. 627 So.2d at 708. The district chief did not know the woman's voice, nor could he identify her as being the plaintiff's wife. *Id.* In order to confirm the woman's identity, the district chief called her back at the number given by her. *Id.* Thereafter, the plaintiff was ordered to submit to a urinalysis and blood test. *Id.* The plaintiff refused to submit to the test, and he was immediately suspended and later terminated from his job. *Id.* at 708-09. The CSC upheld the plaintiff's termination. *Id.* at 709. In the appeal of the CSC's decision, this Court concluded that no showing of reasonable suspicion to subject the plaintiff to the test was made, considering that "no corroboration of the authenticity of [the] call was made with the exception of the district chief calling back to the number given by [the] caller herself," "plaintiff exhibited no unusual conduct on the morning of the call," and "no substantial investigation [was conducted] before ordering plaintiff to submit to the test." *Id.* at 709-10. Accordingly, the Court reversed the plaintiff's termination and ordered that he be reinstated with all back pay. *Id.* at 710.

In the case *sub judice*, Flint received a text message from an unknown informant who identified herself as "Ms. Boyd" that two SWB employees were "drinking beer on the clock." The text message identified the work vehicle in which the employees were riding as "Van 39" and provided its location. Ms. Boyd

7

and Flint were not called to testify at the CSC hearing. No substantial investigation was conducted by SWB to corroborate or confirm that Crayton had been drinking, prior to ordering him to submit to a substance abuse test. SWB made no attempt to contact Ms. Boyd prior to ordering Crayton to submit to substance abuse testing even though it had her phone number. While Edwards did attempt to secure surveillance footage of the location where the alcohol consumption had been reported, he did so (unsuccessfully) three days after Crayton underwent the substance abuse test.

SWB had no evidence, prior to subjecting Crayton to a substance abuse test, to corroborate that SWB vehicle no. 39, the vehicle in which Crayton was riding, was at or near the location reported by Ms. Boyd. Further, there was no evidence of any unusual conduct on Crayton's part that might indicate that he was under the influence of alcohol.[4] Based on the circumstances presented in this case, we cannot say that the CSC's finding that reasonable suspicion did not exist to subject Crayton to substance abuse testing was manifestly erroneous.

That SWB lacked reasonable suspicion to order Crayton to submit to substance abuse testing does not conclude the matter. There must further be a determination whether the illegally obtained evidence was nevertheless admissible at the hearing before the CSC.[5] The CSC did not make a determination as to the

---

[4] In fact, according to the evidence presented at the hearing, Williams did not observe any signs of impairment on the part of Crayton. Further, Crayton testified that he was not impaired.

[5] We note that, at the outset of the hearing, the hearing examiner noted Crayton's objection to the admissibility of the substance abuse test results based on lack of reasonable suspicion:

> [HEARING EXAMINER]:
> All right. And, the appellant contends that the appointing authority lacked reasonable suspicion to conduct a test, and therefore, the test is not admissible for purposes of taking disciplinary action; would that be accurate also?

admissibility of the evidence. Rather, upon determining that SWB lacked reasonable suspicion to subject Crayton to substance abuse testing, the CSC concluded that Crayton was wrongfully terminated. We find that the CSC erred in failing to determine the admissibility of the substance abuse testing evidence and proceed to make such a determination.

Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal trial. *State v. Davis*, 375 So.2d 69, 73 (La. 1979) (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)) (additional citation omitted); *see also* La. C.Cr.P. art. 703(A)("A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.").

In *Pullin v. Louisiana State Racing Commission*, 484 So.2d 105 (La. 1986), the Louisiana Supreme Court considered the issue of whether evidence that was illegally obtained by state police officers would still be admissible in a civil administrative proceeding before the Racing Commission. In that case, the Racing Commission suspended an owner and trainer of a racehorse after prohibited drugs were found in his stable area by state police officers, in violation of the racing rule, which banned the use of these particular drugs. *Id.* at 105. The Supreme Court found the drugs were obtained illegally, as the search was not authorized or consented to by the horse owner/trainer. *Id.* at 106. The balancing test in *Pullin* was used to determine whether the Racing Commission's violation of

---

[COUNSEL FOR CRAYTON]:
Yes, that's correct.

At the conclusion of the hearing, the hearing examiner requested that the parties submit memoranda on "the issue of whether or not there was reasonable suspicion to conduct the [substance abuse] test."

owner/trainer's Fourth Amendment rights warranted exclusion of the illegally obtained evidence.

Applying the "balancing test" of *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Court held that the exclusionary rule did not apply in civil proceedings before the Racing Commission because the likely social costs of excluding the unlawfully-seized evidence, a potential dishonest racing industry, outweighed the likely social benefits of excluding the evidence, the deterrent sanction value against the state law enforcement officers who illegally seized the prohibited drugs. *Pullin*, 484 So.2d at 107-08.

In *City of Alexandria v. Dixon*, 15-1718 (La. 5/3/16), 196 So.3d 592, the Supreme Court considered the issue of whether the results of breath alcohol tests that were not administered in accordance with the city's substance abuse policy were admissible at a terminated employee's hearing before the municipal civil service board. In *Dixon*, a firefighter was terminated after random blood alcohol tests administered to him registered a positive result. *Id.*, 15-1718, p. 3, 196 So.3d at 593-94. The city's substance abuse policy set forth a "zero tolerance" policy and provided that "[t]esting for alcohol shall be by those methods approved and recognized by the State of Louisiana for cases concerning driving while intoxicated. All testing procedures shall conform to applicable state and federal laws." *Id.*, 15-1718, p. 2, 196 So.3d at 593. The testimony elicited at the hearing before the civil service board established that the breath alcohol tests were performed on a device that was not approved by the Louisiana Department of Public Safety and Corrections for determining blood alcohol content. *Id.*, 15-1718, p. 13, 196 So.3d at 600. The Supreme Court found that "any social benefit of considering the excluded breath test results (which may include an emphasis on the

City correctly applying its own policy, and likewise, the employees being aware of the regulations and related consequences of violations of the Policy) are outweighed by the social costs of excluding the results (the risk of placing the public in danger when their first responders may be under the influence of alcohol while on duty)" and that "the [*Pullin*] balancing test requires the admission and consideration of [the employee's] failed breath alcohol test results." *Id.*, 15-1718, pp. 12-14, 196 So.3d at 600.

We next perform the balancing test required by *Pullin* to determine whether SWB's violation of Crayton's Fourth Amendment rights warrants exclusion of the illegally obtained evidence.

Crayton admitted at the hearing that he operated SWB vehicle no. 39 on the day in question. He further admitted that he operated a SWB vehicle, usually a painter's truck, every day at work. An employee's operation of a vehicle while under the influence of alcohol poses a threat to the safety of the public. Consistent with *Pullin* and *Dixon*, we find that the social costs of excluding the results of Crayton's substance abuse tests (the risk of placing the public in danger when SWB employees may be under the influence of alcohol while operating a vehicle on duty), outweigh any social benefit of such exclusion (the deterrent effect on SWB to correctly apply its own policy allowing substance abuse testing based on reasonable suspicion). Accordingly, we find that the substance abuse test results are admissible and should have been considered by the CSC. The CSC erred in deciding the appeal without considering this evidence.

When a trial court makes one or more prejudicial legal errors, which interdict the fact-finding process, the manifest error standard no longer applies, and, where the record is complete, the appellate court must undertake its own *de*

11

*novo* review of the record. *In re Succession of Sporl*, 04-1373, p. 5 (La. App. 4 Cir. 4/6/05), 900 So.2d 1054, 1058 (citing *Evans v. Lungrin*, 97-0541, 97-0577, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735; *McLean v. Hunter*, 495 So.2d 1298, 1303-04 (La. 1986)). Where the trial court has erroneously excluded evidence, "[t]he court of appeal must ... redetermine the facts [*de novo*] from the entire record (including the proffered testimony) and decide the merits of the case." *Latour v. Steamboats, LLC*, 23-00027, p. 17 (La. 10/20/23), 371 So.3d 1026, 1040-41 (parenthetical in original). We therefore must conduct a *de novo* review of the entire record, including the substance abuse test results, and decide whether Crayton violated SWB's substance abuse policy.

Ms. Boyd did not testify at the hearing, and SWB presented no evidence that Crayton was present near the corner of Dumaine Street and Claiborne Avenue, where Ms. Boyd reported that two SWB employees were "drinking beer on the clock." Further, SWB presented no testimony that Crayton consumed alcohol on the day in question, nor was there any evidence of unusual conduct on Crayton's part which might indicate that he was under the influence of alcohol. To the contrary, Edwards testified that Williams told him that he did not observe any signs of impairment on the part of Crayton during his interaction with Crayton.

Crayton testified that he and his son drank "a little over a six-pack" of beer the night before the alleged incident while celebrating his son's birthday at home. He stated that he and his son started drinking at around 7:00 p.m. and stopped around 12:00 a.m. or 1:00 a.m. Crayton denied consuming alcohol during the day in question and stated that he was not impaired that day. Further, he denied being in the vicinity of Dumaine Street and Claiborne Avenue at any time that day.

12

The SWB policy expressly prohibited employees, while working or while operating a SWB vehicle, from "[b]eing under the influence of alcohol," which was defined as "a confirmed positive test result for an alcohol concentration greater than or equal to 0.02." It is undisputed that Crayton was administered two breathalyzer tests approximately nineteen minutes apart and that the tests indicated a blood alcohol concentration of .036% and .030%, respectively. Based on the evidence, we find that SWB proved that Crayton violated its policy that employees from being under the influence of alcohol while working.

However, we find that SWB failed to prove that the disciplinary action imposed, *i.e.*, termination, was commensurate with Crayton's offense.

Termination from permanent employment is "the most severe form of disciplinary action that can be taken by the [a]ppointing [a]uthority, and should be reserved for the most serious violation." *Matusoff v. Dep't of Fire*, 19-0932, pp. 7-8 (La. App. 4 Cir. 5/20/20), 364 So.3d 240, 245 (quoting *Matthews v. Dep't of Police*, 98-0467, p. 8 (La. App. 4 Cir. 11/18/98), 723 So.2d 1044, 1049). In determining whether discipline is commensurate with the infraction, the CSC "considers the nature of the offense as well as the employee's work record and previous disciplinary record." *Id.*, 19-0932, p. 8, 364 So.3d at 245 (citing *Hills v. New Orleans City Council*, 98-1101, p. 7 (La. App. 4 Cir. 12/9/98), 725 So.2d 55, 58).

In *Durning v. New Orleans Police Dep't*, 19-0987 (La. App. 4 Cir. 3/25/20), 294 So.3d 536, this Court held that the disciplinary action of termination was not commensurate with a police officer's violation of the police department's policy regarding the use of alcohol while on duty. In that case, a New Orleans Police Department ("NOPD") police officer traveled in the department's vehicle to his

13

annual firearm recertification training. *Id.*, 19-0987, p. 1, 294 So.3d at 537. After the training, the officer interacted with the range instructor; during that interaction, the range instructor detected the smell of alcohol on the officer's breath. *Id.* The instructor notified a detective of NOPD's Public Integrity Division, who also noticed the smell of alcohol on the officer's breath. *Id.* The detective transported the officer to Innovative Risk Management, where he was given two breathalyzer tests approximately twenty-five minutes apart. *Id.*, 19-0987, p. 2, 294 So.3d at 537. The tests indicated a blood alcohol concentration of 0.063% and 0.058%, respectively. *Id.*

After a disciplinary proceeding, the officer was terminated for violating the department policy that prohibited the use of alcohol while on duty.[6] *Id.* He also received a one-day suspension for violating the department policy that prohibited the operation of a city vehicle while under the influence of alcohol.[7] *Id.*, 19-0987, pp. 2-3, 294 So.3d at 537-38. The officer appealed his termination to the CSC. *Id.*, 19-0987, p. 2, 294 So.3d at 538.

---

[6] The department policy prohibiting the use of alcohol on duty provided as follows:

> Members shall not drink intoxicating beverages while on duty except in the performance of duty and while acting under proper and specific orders from a superior officer. Members shall not appear for duty, or be on duty, while under the influence of intoxicants to any degree whatsoever, or with an odor of intoxicants on their breath.

*See Durning*, 19-0987, p. 2, 294 So.3d at 538.

[7] The department policy prohibiting the operation of a city vehicle while under the influence of alcohol provided, in pertinent part, as follows:
> An employee or other whose blood alcohol level (BAC) is at or over 0.04% during work time or while operating City vehicles/equipment is in violation of the Substance Abuse Policy.

*Id.*

The testimony presented to the CSC established that the day before the training was the officer's birthday. *Id.*, 19-0987, p. 4, 294 So.3d at 539. The officer testified that he had watched a baseball game and drank some vodka and four or five beers before going to bed. *Id.* The officer further stated he woke up around 3:30 a.m. to get to the shooting range for 5:00 a.m. *Id.* He testified that he left his house without showering. *Id.* He claimed that at no time that morning did he feel impaired or did he believe he was under the influence of alcohol. *Id.*

The CSC also heard the testimony of a sergeant in NOPD's Public Integrity Bureau. *Id.* According to the sergeant's testimony, he received a phone call advising of an officer under the influence. *Id.*, 19-0987, pp. 4-5, 294 So.3d at 539. He confirmed that although the range instructor and the Public Integrity Division detective detected the smell of alcohol on the officer, neither officer noticed any signs of cognitive or physical impairment. *Id.*, 19-0987, p. 5, 294 So.3d at 539. The sergeant instructed the detective to transport the officer to the Innovative Risk Management office, where the sergeant met them. *Id.* The sergeant confirmed that during his interaction with the officer, the officer showed no physical or cognitive signs of impairment. *Id.*

The CSC granted the appeal in part, reinstating the officer and reducing his penalty to an eighty-day suspension for his violation of the policy prohibiting the use of alcohol while on duty, and denied the appeal in part, affirming the one-day suspension for the driving violation. *Id.*, 19-0987, pp. 2-3, 294 So.3d at 538. NOPD appealed the CSC's decision. *Id.*, 19-0987, p. 3, 294 So.3d at 538. This Court agreed with the CSC in finding that the NOPD had not "established sufficient aggravating circumstances to warrant termination of an eleven-year

veteran for the first-time violation of the rule against use of alcohol while on duty" and affirmed the CSC's decision. *Id.*, 19-0987, pp. 7-8, 294 So.3d at 540.

We find in the case *sub judice* that SWB failed to prove that termination was commensurate with Crayton's offense. Crayton worked for SWB for over six years. The appeal record contains no evidence of any previous disciplinary action taken against Crayton, much less disciplinary action for violating the substance abuse policy, nor does the record contain any evidence that Crayton's work history was unsatisfactory. Further, no evidence was presented that Crayton was impaired, and his blood alcohol level was well within the blood alcohol level permitted under Louisiana's DWI statute.[8] Moreover, Crayton testified that he did not drink any alcohol on the day in question and was not impaired on that day. He theorized that his positive blood alcohol test result could be attributed to his consumption of alcohol the night before. Under the SWB substance abuse policy, rehabilitation is an appropriate course of action the first time an employee tests positive for alcohol or drugs.[9] The record is devoid of any evidence that SWB considered rehabilitation as an appropriate sanction for Crayton's violation of the substance abuse policy.

_____

[8] La. R.S. 14:98 provides, in pertinent part:

> A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle . . . when any of the following conditions exist:
> . . .
> (b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood.

[9] SWB's substance abuse policy provides, in pertinent part, as follows:

> The first time a regular employee tests positive for alcohol or illegal drug use under this policy, will result in an immediate suspension without pay, until the SWB[] at its discretion may determine if rehabilitation or termination is the appropriate course of action. . . . The second time a regular employee tests positive for alcohol or illegal drug use under this policy, will result in termination of employment.

Consequently, we find on the record before us, that there is no rational basis to conclude that Crayton's infraction is deserving of the most extreme level of discipline possible. Under the circumstances of this case, we find that an eighty-day suspension without pay is the appropriate disciplinary action.

## CONCLUSION

For the foregoing reasons, we find, after conducting a *de novo* review of the evidence in the record, that Crayton violated SWB's substance abuse policy. Therefore, we reverse the judgment of the CSC, which found that Crayton was wrongfully terminated and reinstated Crayton with back pay and all other emoluments of employment. However, we find that termination is an excessive disciplinary action not commensurate with Crayton's violation of the substance abuse policy and that an eighty-day suspension without pay is the appropriate disciplinary action. Consequently, we order SWB to reinstate Clayton, subject to the suspension for eighty days.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED**

17